## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DIANA RALLO,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11-CV-0612-CVE-PJC** |
| | ) | |
| **MILLICENT NEWTON-EMBRY,** | ) | |
| **Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 2) filed by Petitioner,

Diana Rallo, a state prisoner represented by attorney Bill Zuhdi. Petitioner also separately filed a

brief in support of her petition (Dkt. # 10). Respondent filed a response to the petition (Dkt. # 15),

and provided the state court record necessary for resolution of Petitioner's claims (Dkt. # 16).

Petitioner did not file a reply. For the reasons discussed below, the petition for writ of habeas corpus

shall be denied.

## *BACKGROUND*

Beginning around 10:00 p.m. on March 21, 2007, Bartlesville police officers Lieutenant Rick

Silver and Sergeant Glenn McClintock began surveillance on the home of Petitioner's brother, Jack

Morrison. (Dkt. # 16-4, Tr. Vol. II at 59). On the morning of March 22, 2007, at around 8:30 a.m.,

officers observed a vehicle pull into the driveway of the residence. Id. at 62-63. The vehicle had

been rented by Petitioner and was occupied at the time by Petitioner and Morrison. Id. at 64-65.

Officers approached, announced their presence and purpose, and executed a search warrant for the

vehicle. Id. at 64. While Petitioner initially cooperated with officers, she then struggled with

Sergeant McClintock. Id. at 149-50. During the struggle, Sergeant McClintock observed Petitioner

reach for something on the floor of the vehicle in front of her.  Id. at 150.  On the floorboard, among

other items, was a white and yellow plastic container.  Id.  As the officer pulled Petitioner out of the

vehicle, the items on the floorboard, including the white and yellow container, fell out of the vehicle

on to the ground.  Id. at 151.  Inside the container was 432.35 grams of methamphetamine.  Id. at

208-10.

Based on these facts, Petitioner was charged by information in Washington County District

Court, Case No. CF-2007-120, with Trafficking in Illegal Drugs.  Id. at 10.  A jury found Petitioner

guilty of the crime charged, id. at 285, and, at the conclusion of the second stage, recommended a

sentence of life without the possibility of parole after finding Petitioner had two or more previous

felony convictions.  Id. at 301.  On June 4, 2008, the trial judge sentenced Petitioner in accordance

with the jury's recommendation.  See Docket Sheet, On Demand Court Records, www1.odcr.com.

Attorney Kristi Sanders represented Petitioner at trial.  (Dkt. # 16-4, Tr. Vol. II at 1).

Represented by attorney Bill Zuhdi, Petitioner perfected a direct appeal to the Oklahoma

Court of Criminal Appeals (OCCA).  (Dkt. # 15-1).  Petitioner raised six (6) propositions of error,

as follows:

> Proposition I:      The trial court erred in admitting evidence seized unlawfully and in
> admitting evidence obtained as the fruit of the illegally seized
> evidence, violating Ms. Rallo's rights under the Fourth, Fifth, Sixth
> and Fourteenth Amendments to the United States Constitution and
> [her rights] under [ ] the Oklahoma constitution.
>
> Proposition II:     Other crimes evidence was improperly admitted and the introduction
> of the other crimes evidence unduly prejudiced the jury against Ms.
> Rallo and violated her rights under the Fifth, Sixth and Fourteenth
> Amendments of the United States Constitution and violated her rights
> under Okla. Const. Article II, §§ 7 and 20.

| Proposition III: | Prosecutor misconduct unfairly tainted the jury against Ms. Rallo, rendering her trial proceedings fundamentally unfair prejudicing Ms. Rallo's rights to a fair trial pursuant U.S. Const. Amendments V, VI and XIV and Okla. Const. Article II, § 20. |
|---|---|
| Proposition IV: | Ms. Rallo received ineffective assistance of trial counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution. |
| Proposition V: | The trial court erred in allowing inadmissible and damaging hearsay into the trial. |
| Proposition VI: | The trial errors complained of herein cumulatively denied Ms. Rallo's right to a fair trial under the United States and Oklahoma Constitution and therefore, her conviction and sentence must be reversed. |

Id. In an unpublished opinion, filed July 7, 2010, in Case No. F-2008-547, the OCCA denied relief and affirmed the Judgment and Sentence of the district court. (Dkt. # 15-3).

On October 5, 2011, Petitioner commenced this federal action by filing her petition for writ of habeas corpus (Dkt. # 2). Petitioner raises the same six grounds for relief she raised on direct appeal. See Dkt. ## 2, 10. In response to the petition, Respondent argues that Ground I is not proper for federal habeas review because Petitioner was given an opportunity for full and fair litigation of her Fourth Amendment claim in the state courts. (Dkt. # 15). Respondent also argues that Grounds II and V are matters of state law not cognizable on habeas review, and that the OCCA's rulings on Grounds III, IV and VI were not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Id.

## *ANALYSIS*

### A.    **Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner

raised Grounds I-VI to the OCCA on direct appeal. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement.'" Id. (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-87 (2011));
see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

"When a federal claim has been presented to a state court and the state court has denied
relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of
any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85.
Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal
courts review these claims under the deferential standard of § 2254(d). Id. at 784; Schriro v.
Landrigan, 550 U.S. 465, 474 (2007). Further, the "determination of a factual issue made by a State
court shall be presumed to be correct. The applicant shall have the burden of rebutting the
presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Here, Petitioner presented her habeas claims to the OCCA on direct appeal. Because the
OCCA addressed Petitioner's claims on the merits, the Court will review these claims under the
standards of § 2254(d).

### 1.     Improper admission of seized evidence (Ground I)

As her first ground of error, Petitioner claims the "OCCA erroneously found the trial court
did not abuse its discretion by denying [Petitioner's] motion to suppress the evidence from the
execution of the search warrant on March 22, 2007 and admitting the evidence at trial." (Dkt. # 10
at 9). The search warrant, executed on March 22, 2007, relied on information obtained from a
confidential informant. (Dkt. # 16-4, Tr. Vol. II at 58). The confidential informant told law
enforcement that Petitioner would be returning from Phoenix, Arizona with Morrison in a rental
vehicle and she would likely be in possession of "several ounces or pounds of methamphetamine."
Id. at 58. Petitioner asserts that "the OCCA incorrectly found the magistrate was presented with

sufficient information to support the finding of probable cause," because the affidavit in support of the search warrant "failed to set forth sufficient information as to the basis of the confidential informant's knowledge and information." (Dkt. # 10 at 9-10). Petitioner argues these errors violated her rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments.[1] Id. at 10. In rejecting this claim on direct appeal, the OCCA explained:

> Rallo contends that the search warrant application is insufficient because it failed to provide the confidential informant's "basis of knowledge" for the information he provided to Silver. While Silver's affidavit never specifically states that Rallo had a conversation with the confidential informant, the affidavit shows that Rallo either spoke to the confidential informant or discussed her plans in the informant's presence. (O.R. 32) ("The informant advised that Rallo *said* . . . Rallo *advised* them . . .") (emphasis added). The affidavit provided sufficient information for the magistrate to assess the confidential informant's reliability and basis of knowledge. Furthermore, key information provided by the informant was verified by Silver's independent investigation and the information provided about the March 8 traffic stop of Rallo. Under the totality of the circumstances, the magistrate here was presented with sufficient information to support a finding of probable cause.

(Dkt. # 15-3 at 5). Respondent argues that Petitioner was provided the opportunity for full and fair litigation of these Fourth Amendment issues, thus precluding habeas relief according to Stone v. Powell, 428 U.S. 465 (1976). (Dkt. # 15 at 2-4).

In Stone, the Supreme Court held that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial. Stone, 428 U.S. at 482. The Tenth Circuit has reiterated that a federal habeas corpus court may not overturn a state criminal conviction because of a violation of the Fourth

---

[1] The focus of Petitioner's argument is the alleged Fourth Amendment violation. Petitioner's attorney fails to clearly explain in the petition how the admission of the evidence seized on March 22, 2007 violated Petitioner's rights under the Fifth, Sixth or Fourteenth Amendments. However, the Court finds the admission of this evidence did not violate Petitioner's due process or trial rights as enumerated in these Amendments.

Amendment if the petitioner had a full and fair opportunity to litigate the claim. Brown v. Sirmons, 515 F.3d 1072, 1082 (10th Cir. 2008); Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992); Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978). The opportunity for full and fair consideration detailed in Stone "includes, but is not limited to[,] the procedural opportunity to raise or otherwise present a Fourth Amendment claim[ ] and the full and fair evidentiary hearing contemplated by Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963)." Cannon v. Gibson, 259 F.3d 1253, 1261 (10th Cir. 2001) (quoting Miranda, 967 F.2d at 401).

After careful review, the Court concludes that the state courts granted Petitioner a full and fair opportunity to litigate her Fourth Amendment claims. Prior to trial, Petitioner filed a motion to suppress challenging the validity of the search warrant and requesting suppression of all evidence flowing from the search. (Dkt. # 16-1, Tr. Mot. Hr'g at 3). On October 4, 2007, the trial judge conducted a hearing on the motion. Id. at 3-36. After hearing the parties' arguments, the trial judge determined that: (1) under the totality of the circumstances test, "sufficient indicia of reliability of the informant" existed, and (2) sufficient probable cause existed to support the search warrant. Id. at 28-35. The trial judge then overruled Petitioner's motion to suppress. Id. at 35.

Petitioner also raised her Fourth Amendment claim on direct appeal to the OCCA. (Dkt. # 15-1 at 14-25). The OCCA rejected Petitioner's claim, holding that "the affidavit provided sufficient information for the magistrate to assess the confidential informant's reliability and basis of knowledge," and "under the totality of the circumstances, the magistrate [ ] was presented with sufficient information to support a finding of probable cause." (Dkt. # 15-3 at 5).

In the petition, Petitioner's attorney acknowledges that the question of whether the state provided Petitioner an opportunity for full and fair consideration of her Fourth Amendment claim is "critical" to the analysis of Ground I. (Dkt. # 10 at 13). Petitioner further acknowledges that the trial court held a hearing on the motion to suppress, and the OCCA considered the claim on direct appeal. Id. However, Petitioner argues "that the state did not provide her an opportunity for a full and fair litigation of her Fourth Amendment claims notwithstanding that a hearing was held because the confidential informant's basis of knowledge for the information he provided [Lieutenant] Silver was never established." Id.

After review of the record, the Court finds that Petitioner had a full and fair opportunity to litigate her Fourth Amendment claim in the state courts. While Petitioner claims that the lack of basis for the confidential informant's information prevented full and fair consideration of Petitioner's claims, the record demonstrates that both the trial judge and the OCCA carefully considered whether the information provided was sufficient. Both the trial judge and the OCCA ruled that under the totality of the circumstances approach, sufficient information, including corroboration by Lieutenant Silver, existed for the magistrate to assess the credibility of the informant and find that probable cause existed. As a result, this Court is precluded from considering the issues raised in Ground I of Petitioner's petition for a writ of habeas corpus based on Stone, 428 U.S. at 494. See also Gamble, 583 F.2d at 1165 (opportunity for full and fair litigation in state court under Stone v. Powell includes opportunity to raise Fourth Amendment claim, full and fair evidentiary hearing, and recognition and application of correct Fourth Amendment standards). Petitioner's request for habeas relief on Ground I shall be denied.

**2.      Improper admission of other crimes evidence (Ground II)**

In Ground II, Petitioner argues that "other crimes evidence admitted during her trial unduly prejudiced her and caused the jury to find her guilty," thereby violating "her rights under the Fifth, Sixth and Fourteenth Amendments." (Dkt. # 10 at 15). The "other crimes evidence" admitted at trial related to a March 8, 2007 traffic stop involving Petitioner conducted by Officer William Diaz. (Dkt. # 16-4, Tr. Vol. II at 21-53). During the stop, Officer Diaz learned the driver and his passengers, including Petitioner, were driving to Arizona in a vehicle rented by Petitioner. Id. at 25-30. Additionally, Officer Diaz discovered $21,196.00 in U.S. currency in Petitioner's purse and in the glove compartment of the vehicle. Id. at 34-36. The trial judge found this evidence was admissible to show a "common scheme or plan" as permitted by Oklahoma evidentiary rules and Burks v. State, 594 P.2d 771 (Okla. Crim. App. 1979). (Dkt. # 16-3, Tr. Mot. Hr'g at 37). The OCCA determined that while the "common scheme or plan" exception did not apply to the facts of Petitioner's case, the evidence of the March 8th traffic stop was nonetheless admissible under a separate exception:

> Evidence of another trip to Arizona with a large amount of cash within two weeks of her arrest was probative of an ongoing activity and tended to show that Rallo had knowledge of the drugs seized on March 22 and that her presence in the car at that time was no mistake. The evidence was relevant and not unduly prejudicial; the trial court did not err in admitting it.

(Dkt. # 15-3 at 11). Respondent asserts Petitioner's claim is a matter of state law not cognizable on federal habeas review, and that the admission of the other crimes evidence did not render Petitioner's trial fundamentally unfair. (Dkt. # 15 at 4-10).

Federal habeas relief is not permitted for state law errors. See Rose v. Hodges, 423 U.S. 19, 22 (1975). It is well established that federal courts "will not disturb a state court's admission of

evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies [the petitioner] due process of law." Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002) (quoting Duvall v. Reynolds, 139 F.3d 768, 787 (10th Cir. 1998)). Therefore, this Court must determine whether, when "considered in light of the entire record, [the admission of other crimes evidence] resulted in a fundamentally unfair trial." Id. This standard "will be satisfied only if the 'probative value of [the challenged] evidence is . . . greatly outweighed by the prejudice flowing from its admission . . . .'" Welch v. Sirmons, 451 F.3d 675 (10th Cir. 2006) (quoting Knighton, 293 F.2d at 1171).

Petitioner argues that the admission of this evidence rendered her trial fundamentally unfair because "based on the trial court's ruling, she had to defend a common scheme or plan scenario, since that is what the trial court ruled. The decision of the OCCA, [Petitioner] asserts, in essence states that she should have defended against absence of mistake because the trial court erred in admitting the evidence under common scheme or plan." (Dkt. # 10 at 16-17). Petitioner asserts "the OCCA's decision that it was properly admitted under a different, not offered purpose violated [Petitioner's] due process rights." Id. at 18.

Upon review of the record, the Court finds that Petitioner was not denied a fundamentally fair trial as a result of the trial court's admission of the other crimes evidence. The evidence of the March 8th traffic stop was relevant to show that the Petitioner had knowledge of the drugs found in the vehicle on March 22nd. Additionally, the evidence also tended to show that Petitioner's presence in the vehicle returning from Arizona on March 22nd was not a mistake or an accident. Officer Diaz described for the jury the factors that led to his conclusion that drug activity was occurring on March 8, 2007: (1) the occupants of the vehicle offered inconsistent explanations for

why they were driving to Arizona, (2) the large quantity of money found in the vehicle was "rubber banded in $1,000.00 increments," and (3) a set of digital scales was discovered in the back of the vehicle. (Dkt. # 16-4, Tr. Vol. II at 25-40). The Court also notes that the trial judge instructed the jury as follows:

> Evidence has been received that the defendant has allegedly committed an offense other than that charged in the Information. You may not consider this evidence as proof of the guilt or innocence of the defendant of the specific offense charged in the Information. This evidence has been received solely on the issue of the defendant's alleged common scheme or plan. This evidence is to be considered by you only for the limited purpose for which it was received.

(Dkt. # 15-4 at 2).

Petitioner has failed to demonstrate that the probative value of this evidence was "greatly outweighed by the prejudice flowing from its admission." See Welch, 451 F.3d at 688 (quoting Knighton, 293 F.3d at 1171). Therefore, this Court cannot determine that the admission of other crimes evidence rendered Petitioner's trial fundamentally unfair, or that the OCCA's conclusion was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Habeas corpus relief shall be denied on Petitioner's Ground II.

### 3.     Prosecutorial misconduct (Ground III)

In Ground III, Petitioner claims that prosecutorial misconduct resulted in an unfair trial violating her rights under the Fifth, Sixth and Fourteenth Amendments. (Dkt. # 10 at 21). First, Petitioner argues that, during closing argument, the prosecutor referenced her failure to testify. Id. at 22. "The prosecutor made a direct reference to [Petitioner's] failure to testify when the prosecutor stated, 'the evidence that has been presented to you in this trial is uncontroverted. Understand. Uncontroverted.'" Id. Second, Petitioner argues the prosecutor made an improper reference to her "guilty behavior" that rendered her trial unfair. Id. at 24. Specifically, Petitioner argues that, while

in front of the jury and responding to an objection by defense counsel, the prosecutor stated that the testimony he wished to elicit from a witness with regard to Petitioner's demeanor during her arrest would "show guilty behavior, very guilty behavior." See Dkt. # 16-4, Tr. Vol. II at 67. The OCCA denied relief on these claims, finding as follows:

> During his second closing in the first stage of trial the prosecutor repeatedly claimed that the evidence proving Rallo's guilt was uncontroverted. Rallo claims that the prosecutor's comments that the State's evidence was uncontroverted, when viewed in combination with the prosecutor's comments that Rallo never offered an explanation for the evidence presented by the State, were impermissible and require reversal. These comments, however, viewed both individually and collectively did not call attention to the fact that Rallo did not testify and refer only to Rallo's failure to present evidence to refute the State's case. There is no error here.
>
> The prosecutor asked Lt. Silver about Rallo's combative behavior during the execution of the search warrant inquiring, "what, if anything, did you notice about the demeanor of this defendant in relationship to Glenn McClintock?" Defense counsel objected to this question. Responding to the objection, in the presence of the jury, the prosecutor stated that Rallo's "demeanor is going to show guilty behavior, very guilty behavior." Rallo claims that the prosecutor's statement injected the prosecutor's personal belief that Rallo was guilty. The prosecutor did not assert that he believed that Rallo was guilty, but stated that the evidence at the center of the objection was going to show she demonstrated "guilty behavior." Rather than expressing an improper opinion, the prosecutor explained why the question was relevant and his response to defense counsel's objection did not unfairly prejudice Rallo. Although the better practice would have assured counsel's response was made out of the jury's hearing, no relief is required here.

(Dkt. # 15-3 at 13-14). Respondent argues that the OCCA's decision was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. (Dkt. # 15 at 11).

Prosecutorial misconduct can result in constitutional error in one of two ways. DeRosa v. Workman, 679 F.3d 1196, 1222 (10th Cir. 2012). "First, prosecutorial misconduct can prejudice 'a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right.'" Id. (quoting Matthews v. Workman, 577 F.3d 1175, 1186 (10th Cir. 2009)). Second, absent the infringement of a specific constitutional right, prosecutorial misconduct can result in

constitutional error if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). In other words, in the habeas context, the petitioner must establish that the prosecutor's misconduct was "of sufficient significance to result in the denial of the [petitioner]'s right to a fair trial." Greer v. Miller, 483 U.S. 756, 765 (1987) (internal quotation marks omitted). In considering whether a habeas petitioner has satisfied this standard, the offending prosecutorial remark or action must be placed in the context of the whole trial, and not viewed in isolation. Id. at 765–66. Furthermore, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006). To determine whether a trial is rendered fundamentally unfair, the Court examines the entire proceeding, "including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase," as well as "[a]ny cautionary steps - such as instructions to the jury - offered by the court to counteract improper remarks." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002). "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

### a. Improper comment on right to remain silent

In her habeas petition, Petitioner cites to two instances when, during closing argument, the prosecutor improperly commented on her right to remain silent. First, the prosecutor repeatedly told

the jury that the evidence presented at trial was "uncontroverted." (Dkt. # 16-4, Tr. Vol. II at 276, 277, 278). Specifically, the prosecutor argued that "[t]he evidence that has been presented to you in this trial is uncontroverted. Understand. The only evidence that you have toward guilt of this defendant, it's uncontroverted. Understand. Uncontroverted. You know, defendant gets up and is grasping at straws . . . ." Id. at 276. Second, Petitioner complains that the prosecutor continued his argument, stating that "[s]he's got $21,196. Now look. Watch. You report it to the IRS? No. Matter of fact, there is no explanation." Id. at 279.

While it is well settled that a prosecutor may not comment on the defendant's exercise of her Fifth Amendment right, Griffin v. California, 380 U.S. 609, 615 (1965), it is equally well settled that a prosecutor "is otherwise free to comment on a defendant's failure to call certain witnesses or present certain testimony." Trice v. Ward, 196 F.3d 1151, 1167 (10th Cir. 1999). The dispositive legal inquiry is "whether the language used [by the prosecutor] was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent." Battenfield v. Gibson, 236 F.3d 1215, 1225 (10th Cir. 2001) (alteration in original) (internal quotation marks omitted). When a prosecutor refers to evidence of a petitioner's guilt as "uncontroverted" or "uncontradicted," "such remarks, if they 'concern matters that could have been explained only by the accused, . . . give rise to an innuendo that the matters were not explained because [petitioner] did not testify' and thus, amount to indirect comment on the defendant's failure to testify." Pickens v. Gibson, 206 F.3d 988, 999 (10th Cir. 2000) (quoting United States v. Barton, 731 F.2d 669, 674 (10th Cir. 1984)).

While most of the prosecutor's comments that the evidence establishing Petitioner's guilt was "uncontroverted" were general comments about the evidence as a whole and were not of such

character that the jury would naturally and necessarily take them to be comments on Petitioner's right to remain silent, at times the prosecutor did point to specific pieces of evidence. First, the prosecutor commented on the money seized in the March 8th traffic stop, stating, "[s]he's got $21,196. Now look. Watch. You report it to the IRS? No. Matter of fact, there is no explanation." (Dkt. # 16-4, Tr. Vol. II at 279). The OCCA determined this statement did not call attention to the fact that Petitioner did not testify, but instead pointed to Petitioner's failure to present evidence to refute the state's evidence. (Dkt. # 15-3 at 13). The Court cannot find that the OCCA's ruling with regard to this statement was unreasonable. Petitioner has not established that she was the only person who could have explained the large sum of money seized on March 8, 2007.

The prosecutor also characterized the evidence that Petitioner reached for the white and yellow container as "uncontroverted." That characterization is more problematic. The prosecutor stated, "I mean, the facts, the evidence, it's uncontroverted that this defendant is reaching for $43,000 worth of meth. It's uncontroverted."[2] (Dkt. # 16-4, Tr. Vol. II at 277). Those comments

---

[2]    The prosecutor also drew the jury's attention to Petitioner's failure to call her brother, Jack Morrison, to testify. The prosecutor asked "[w]here's her brother? Why didn't she call her brother? Faced with $43,000 worth of meth, where's her brother?" (Dkt. # 16-4, Tr. Vol. II at 281). Defense counsel immediately objected and argued the prosecutor's reference to Petitioner's failure to call her brother to testify was improper. Id. After a brief discussion, the trial judge stated he would allow the prosecutor to make the argument, but also instructed the jury as follows: "[l]adies and gentlemen of the jury, it is the burden of the state to prove guilt beyond a reasonable doubt. There is no such burden placed upon defendant." Id. at 282. Thereafter, the prosecutor resumed his argument stating, "Ut-oh [sic]. Where's the defendant's brother? Faced with $43,000 worth of meth, the defendant's brother is in the car. Where is he? Do you understand? As we started out, uncontroverted evidence that you have before you." Id. at 282-83. In her habeas petition, Petitioner does not challenge this specific portion of the prosecutor's closing argument. Nonetheless, the Court finds that, because Morrison's criminal charge was pending, the comments were improper. See Trice, 196 F.3d at 1167 n.6 (citing United States v. Miller, 460 F.2d 582, 588 (10th Cir. 1972)); see also United States v. Merryman, 630 F.2d 780 (10th Cir. 1980) ("where the government knows the uncalled witness would likely invoke the Fifth Amendment right against self-incrimination, it is improper to remark upon failure to testify"). However, under the facts of this case, the improper comments were harmless. Fry v. Pliler, 551 U.S. 112, 119 (2007).

concern matters that could have been explained only by Petitioner and give rise to an innuendo that the matters were not explained because Petitioner did not testify. However, even if the comments were indirect comment on the Petitioner's failure to testify, the Court finds that, after review of the trial transcript, in light of the overwhelming evidence of Petitioner's guilt,[3] the comments did not have a "substantial and injurious effect" on the jury's verdict and were, therefore, harmless. Fry, 551 U.S. at 119. Therefore, habeas corpus relief on Petitioner's claims of prosecutorial misconduct based on the prosecutor's allegedly improper comment on her right to remain silent shall be denied.

### b. Improper personal opinion of Petitioner's guilt

Petitioner also complains that the prosecutor improperly expressed his personal opinion of her guilt when he stated, in front of the jury, that the testimony he wished to elicit from a witness would "show guilty behavior, very guilty behavior." See Dkt. # 16-4, Tr. Vol. II at 67. The Court agrees with the OCCA's conclusion that the prosecutor's statement, that the witness's testimony would show Petitioner's "guilty behavior," does not warrant relief. As the OCCA determined, the prosecutor did not assert Petitioner was guilty, but instead commented that the evidence he was attempting to elicit from the witness would show guilty behavior by Petitioner. To grant habeas relief, the Court must conclude that the OCCA's ruling "was not merely wrong but unreasonable."

---

[3] Petitioner's jury heard overwhelming evidence of Petitioner's guilt. Lieutenant Silver testified that he had obtained a search warrant based on information that Petitioner would be returning from Phoenix, Arizona, in a rental car with her brother, Jack Morrison, transporting several ounces or pounds of methamphetamine. (Dkt. # 16-4, Tr. Vol. II at 58). During the execution of the search warrant, the container of methamphetamine was on the floorboard of the vehicle in front of Petitioner. Id. at 150-151. After Petitioner arrived at the jail, the booking officer located a black coin purse in her jacket that contained methamphetamine and paraphernalia. Id. at 196-97, 89-90. The State also presented evidence of a prior traffic stop conducted by Officer Diaz on March 8, 2007. During that stop, Officer Diaz discovered that the driver and passengers, including Petitioner, were driving to Phoenix, Arizona, in a vehicle rented by Petitioner. Id. at 25-25, 29-30. In the vehicle, Officer Diaz found items indicative of criminal activity, including, $21,196 in U.S. currency bundled in $1,000 increments, and a set of digital scales. Id. at 34-36.

See Dockins v. Hines, 374 F.3d 935, 940 (10th Cir. 2004). The Court cannot draw that conclusion in this case. Furthermore, the comment, when viewed in the context of the entire trial, did not result in a fundamentally unfair trial. Therefore, while, as the OCCA noted, the better practice would certainly have been for counsel to make this comment outside the hearing of the jury, Petitioner has failed to demonstrate that the OCCA's adjudication was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Petitioner is not entitled to habeas corpus relief on this claim of prosecutorial misconduct as set forth in Ground III.

### 4. Ineffective assistance of trial counsel (Ground IV)

In Ground IV, Petitioner claims he received ineffective assistance of trial counsel. (Dkt. # 10 at 26). Petitioner alleges trial counsel provided ineffective assistance in failing to object to (1) the admission of Petitioner's post-arrest statements, (2) prosecutorial misconduct detailed in Ground III, (3) the admission of other crimes evidence detailed in Ground II, and (4) the admission of evidence seized on March 22, 2007, detailed in Ground I. Id. at 26-30. The OCCA cited Strickland v. Washington, 466 U.S. 668 (1984), and found Petitioner failed to show prejudice. The OCCA explained its ruling as follows:

> Three of Rallo's claims attacking counsel's performance center on the issues already addressed and decided in this opinion in parts I, II and III.[4] As discussed above, there was no prosecutorial misconduct and the trial court properly admitted evidence about both the March 8 traffic stop and the evidence seized during the March 22 search. Because any objection counsel made would have been overruled, we cannot find the failure to object here is ineffective assistance. See Sanchez v. State, 2009 OK CR ¶ 99, 223 P.3d 980, 1012 (no grounds for claim of ineffective assistance of counsel for failure to object to prosecutorial misconduct where this Court previously found no prosecutorial misconduct occurred). To the extent counsel's performance may have been deficient for failing to object to the State's reference to Rallo's failure to report her gambling winnings to the IRS[,] the reference did not affect the outcome of the trial. Rallo's claim of ineffective assistance of counsel on these grounds merits no relief.

---

[4] In her habeas petition, Petitioner raises these issues in Grounds I, II, and III.

Rallo's fourth claim of ineffective assistance of counsel, regarding counsel's failure to move to suppress and object to the admission of post-arrest statements made by Rallo, has yet to be addressed and requires discussion.

After her arrest, Rallo was transported to the Bartlesville jail. Because Rallo had urinated in the police car on the way to the jail, the transporting officer had Rallo change her clothes. Rallo left her jacket on the counter when she went to change, and another officer, who had just arrived with Rallo's brother, searched Rallo's jacket, a procedure designed to ensure that nothing illegal was brought into the jail. The officer discovered a black coin purse containing a glass pipe and a piece of paper with several hand written notations. He asked Rallo if the piece of paper belonged to her and she initially said that it did and she used it for her bills. After he told her that the paper was discovered with the glass pipe, Rallo claimed that the paper had been planted by the police.

The record is silent on whether Rallo was advised of her rights prior to the search of her jacket. Even if we were to assume that Rallo's statements at the police station were inadmissible; she cannot show she was prejudiced by the admission of those statements. See Ball v. State, 2007 OK CR 42, ¶ 59, 173 P.3d 81, 96 (when a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed). The only damaging statement made by Rallo at the police station was that the "note paper" belonged to her; she denied owning the glass pipe. There was already significant evidence that the "note paper" belonged to her, principally that the paper was found in the pocket of the jacket she was wearing. Further, the evidence pertaining to the "note paper," while relevant, was not critical to prove her possession of the 430 grams of methamphetamine found in the car. Counsel's failure to move to suppress or object to the admission of Rallo's statement that the "note paper" belonged to her did not affect the outcome of the trial.

(Dkt. # 15-3 at 15-17). Respondent argues that the OCCA's denial of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, federal law as established by the Supreme Court. (Dkt. # 15 at 16).

To be entitled to habeas corpus relief on her claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of the claim was an unreasonable application of Strickland. Under Strickland, a defendant must show that her counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent

attorney in criminal cases. <u>Strickland</u>, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." <u>Id.</u> at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Id.</u> at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Id.</u> at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694; <u>see</u> <u>also</u> <u>Sallahdin v. Gibson</u>, 275 F.3d 1211, 1235 (10th Cir. 2002); <u>Boyd v. Ward</u>, 179 F.3d 904, 914 (10th Cir. 1999). If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. <u>Strickland</u>, 466 U.S. at 700. Thus, it is not always necessary to address both <u>Strickland</u> prongs. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under <u>Strickland</u> and through the "deferential" lens of § 2254(d)).

Petitioner bears the burden of demonstrating that the OCCA unreasonably applied <u>Strickland</u>. She has failed to satisfy that burden. In light of the admissible evidence presented at trial, Petitioner cannot demonstrate that the result of her trial would have been different had counsel lodged the objections listed in Ground IV.

### a.    Failure to move to suppress post-arrest statements made by Petitioner

As to Petitioner's first claim, she alleges that she was prejudiced by her counsel's failure to object to the admission of certain post-arrest statements.  At trial, the state introduced evidence of a black coin purse, found in Petitioner's possession during booking at the jail, that contained "two small baggies of a crystal substance," a small glass pipe with residue, and a piece of paper with handwritten notations.  (Dkt. # 16-4, Tr. Vol. II at 90, 196-97).  During cross-examination of the booking officer who found these items at the jail, the following exchange took place:

DEFENSE COUNSEL:    Would you agree with me, officer, there's nothing in that black coin purse, for lack of a better word, that identifies Ms. Rallo?

OFFICER SHELTS:    Only the piece of property that she claimed.

DEFENSE COUNSEL:    I'm sorry?

OFFICER SHELTS:    Only the piece of property that she claimed.

DEFENSE COUNSEL:    When did she claim the property?

OFFICER SHELTS:    The paper in there that has the initials or the letters and numbers on it.

DEFENSE COUNSEL:    Uh-huh.

OFFICER SHELTS:    She initially identified it as being hers and then recanted and said it wasn't.

DEFENSE COUNSEL:    Okay.  Isn't it true that she denied ownership of this bag to you?

OFFICER SHELTS:    Correct.

Id. at 203-04.  On re-direct examination the prosecutor then asked the Officer to explain further the statements made by Petitioner:

PROSECUTOR:    Officer Shelts, could you explain these comments about you said [sic] that she claimed part of the items that were in the purse?

OFFICER SHELTS: Whenever I found the – what I suspected to be the methamphetamine, she said that it wasn't hers. I held up the piece of paper and I said, well, is this piece of paper for your bills or something, and she said yeah, those are notes for my bills. I said – I told her that I had found the notes for her bills in the same pocket that I had found the pipe and everything in. She then said that's not her piece of paper, that we planted it on her.

Id. at 204-05.

Petitioner fails to show the OCCA unreasonably applied Strickland in determining she failed to show prejudice. The jury heard evidence that methamphetamine was found both in the black purse found in Petitioner's possession, and on the floor in front of her in the rental car during the execution of the search warrant. (Dkt. # 16-4, Tr. Vol. II at 89-90, 150-54, 196-98, 204-05, 208-12). Even if defense counsel had objected and successfully argued for the suppression of these post-arrest statements, Petitioner cannot show that the result of her trial would have been different. The OCCA's denial of this claim was not contrary to, or an unreasonable application of, Strickland.

### b. Failure to object to prosecutor misconduct

Next, Petitioner alleges her trial counsel was ineffective for failing to object to improper statements made by the prosecutor. In her petition, Petitioner's counsel states "[t]he exact prejudice to [Petitioner] is provided in Ground Three herein and incorporated into this proposition of error. Because trial counsel was ineffective in failing to object to the prosecutor's misconduct and [Petitioner] was unduly prejudiced as a result, federal habeas relief is appropriate." (Dkt. # 10 at 28). This Court addressed Petitioner's Ground III, regarding prosecutorial misconduct, in section B(3) above. While some of the prosecutor's comments describing the evidence as "uncontroverted" were improper, those comments were harmless in light of the evidence presented at trial. In addition, this Court concluded that the other claims of prosecutorial misconduct raised by Petitioner

in Ground III were not improper and did not render her trial fundamentally unfair. Therefore, Petitioner has failed to satisfy the prejudice prong of <u>Strickland</u>. The OCCA's denial of this claim was not contrary to, or an unreasonable application of, <u>Strickland</u>.

### c. Failure to object to other crimes evidence

As her third claim, Petitioner asserts counsel was ineffective for failing to object to the admission of other crimes evidence at her trial. (Dkt. # 10 at 29). However, the record reflects that counsel did object to the admission of evidence relating to the March 8th traffic stop, first at a motion hearing prior to trial, <u>see</u> Dkt. # 16-3, Tr. Motion Hr'g at 34-43, and then again at trial during the prosecutor's opening statement, <u>see</u> Dkt. # 16-4, Tr. Vol. II at 11. Therefore, Petitioner has failed to show both deficient performance and prejudice as required by <u>Strickland</u>. The OCCA's denial of this claim was not contrary to, or an unreasonable application of, <u>Strickland</u>.

### d. Failure to object to admission of evidence seized

Lastly, Petitioner asserts counsel was ineffective for failing to object to the admission of evidence seized during the execution of the search warrant on March 22, 2007. (Dkt. # 10 at 26). The record reflects that counsel did object to the admission of this evidence by filing a motion to suppress prior to trial. (Dkt. # 16-1, Tr. Motion Hr'g at 3). After conducting a hearing on Petitioner's motion to suppress, the trial judge denied the motion. <u>Id.</u> at 34-35. While counsel failed to renew the objection at trial, that does not render counsel's performance deficient. Because the trial court had denied the motion to suppress, Petitioner has failed to show that any objection by defense counsel at trial would have been sustained. Petitioner cannot satisfy the prejudice prong of <u>Strickland</u>.

Petitioner has not demonstrated that the OCCA's resolution of her claims of ineffective assistance of trial counsel was an unreasonable application of Strickland. 28 U.S.C. § 2254(d). She is not entitled to habeas corpus relief on Ground IV.

**5. Improper admission of hearsay evidence (Ground V)**

In Ground V, Petitioner alleges the trial court erred by allowing inadmissible hearsay testimony to be admitted at trial. (Dkt. # 2 at 14). Petitioner alleges two instances of inadmissible hearsay: (1) that Officer Diaz was permitted to testify that Lieutenant Silver told him Petitioner "was involved in drug trafficking from Phoenix, Arizona into the Bartlesville, Oklahoma area," and (2) that Lieutenant Silver was permitted to testify "regarding the hearsay statements from the informant" that formed the basis of his statement to Officer Diaz that Petitioner was trafficking illegal drugs. See id. at 14-15. The OCCA rejected Petitioner's hearsay claims holding, "[t]he record shows that the conversations were not offered for their truth, but to explain why the officer took specific actions. This is not hearsay and is admissible." (Dkt. # 15-3 at 18). Respondent asserts Petitioner's Ground V is a state evidentiary issue not cognizable on federal habeas review, and that the admission of the alleged hearsay evidence did not deny Petitioner a fair trial. (Dkt. # 15 at 23-26).

As discussed above, "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." McGuire, 502 U.S. at 67-68. "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes, 46 F.3d at 987 (quoting Tapia v.

<u>Tansy</u>, 926 F.2d 1554, 1557 (10th Cir. 1991)). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint." <u>Duckett v. Mullin</u>, 306 F.3d 982, 999 (10th Cir. 2002) (quoting <u>United States v. Rivera</u>, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)).

Petitioner's Ground V concerns matters of state evidentiary law. Therefore, the question for this Court is whether the admission of the alleged hearsay evidence "was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." <u>See</u> <u>Williamson v. Ward</u>, 110 F.3d 1508, 1522 (10th Cir. 1997). "This assessment requires examining both the reliability of the evidence and the significance it had at trial." <u>Id.</u> at 1523.

After reviewing the record in this case, the Court finds that even assuming the comments were hearsay,[5] Petitioner has not made the necessary showing. The record reflects that the trial judge carefully considered defense counsel's objections to the evidence. First, as to the evidence Lieutenant Silver obtained from the confidential informant, the trial judge held a hearing on Petitioner's motion in limine regarding those statements prior to trial. <u>See</u> Dkt. # 16-2, Tr. Motion Hr'g. After listening to the argument of counsel, and posing specific, thoughtful questions to both parties about his concerns, the trial judge determined that the state would be permitted to use information gained from the confidential informant, "but only to the extent that the information can by independently proven to the jury." <u>Id.</u> at 16. To ensure prejudicial evidence would not reach the jury, the trial judge set an additional motion hearing to determine what evidence could be presented

---

[5]     This Court is inclined to agree with the OCCA that the comments were not offered for the truth of the matter asserted, but instead were offered to show the law enforcement officials' state of mind and to explain their actions. However, for purposes of this fundamental fairness analysis, the Court will assume the comments were hearsay.

at trial in accordance with his ruling. Id. at 18-21. At this subsequent hearing, the prosecutor called Lieutenant Silver to describe the information from the informant that the state wished to introduce at Petitioner's trial. See Dkt. # 16-3, Tr. Motion Hr'g. After hearing the proposed testimony of Lieutenant Silver, and additional argument from both counsel, the trial judge determined he would "allow testimony as it relates to the fact that [Lieutenant Silver] made the arrest based upon a search warrant that was based upon information he had obtained from a confidential informant." Id. at 20. The trial judge then cautioned the state that "the witness needs to be very careful, obviously, as he was today, that what he discussed was basically a – I guess in general terms, background of the facts as to why they had to get the search warrant." Id. The trial judge then clearly informed the parties that if, at the time of trial, either party wished to introduce any additional, or more specific, information from the informant, the parties would need to approach the bench and request permission. Id. at 23. After review of the record, the Court finds that the testimony offered by Lieutenant Silver at Petitioner's trial remained general and within the confines of the trial judge's previous rulings.

Second, as to the trial judge's admission of Officer Diaz's testimony concerning a conversation he had with Lieutenant Silver, the trial judge overruled defense counsel's objection after the prosecutor informed the court that Lieutenant Silver would also testify to the content of this conversation during his own testimony later in the trial. (Dkt. # 16-4, Tr. Vol. II at 48-49). The trial judge also allowed the prosecutor to inquire further about the content of the conversation between Officer Diaz and Lieutenant Silver to explain why Officer Diaz did not arrest Petitioner during the traffic stop on March 8, 2007 that was admitted as other crimes evidence. Id. at 49-50. The trial judge found that defense counsel had "opened up" the line of questioning into the contents of the

conversation by previously cross-examining Officer Diaz about the fact that Petitioner was not arrested or charged after the March 8th stop.  Id. at 48.

After review, the Court finds the hearsay evidence complained of was not unduly prejudicial. In addition, the Court finds that, in light of the substantial evidence of Petitioner's guilt, the admission of the complained of evidence did not render her trial fundamentally unfair.  Petitioner's request for habeas corpus on Ground V shall be denied.

### 6.    Cumulative error (Ground VI)

In Ground VI, Petitioner claims that the "combined errors" during her trial deprived her of her right to a fair trial.  (Dkt. # 10 at 30-31).  The OCCA found that Petitioner's "claims of error neither individually nor cumulatively warrant relief."  (Dkt. # 15-3 at 19).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted).  The Tenth Circuit has held that a cumulative error analysis is applicable only where there are two or more actual errors.  Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003).  Additionally, only federal constitutional errors can be aggregated to permit relief on habeas review.  Matthews v. Workman, 577 F.3d 1175, 1195 (10th Cir. 2009).  Cumulative impact of non-errors is not part of the analysis.  Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)).  "[T]he task 'merely' consists of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be

determined to be harmless.'" <u>Grant v. Trammell</u>, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting <u>Rivera</u>, 900 F.2d at 1470).

In this case, this Court has not found two or more harmless errors during Petitioner's trial. As a result, there is no basis for a cumulative error analysis. Petitioner fails to show that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Habeas corpus relief is denied on Ground VI.

## C.    Certificate of Appealability

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the

decision by the OCCA is debatable among jurists of reason.  See Dockins, 374 F.3d at 938.  As to those claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds is debatable or incorrect.  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.  A certificate of appealability shall be denied.

*CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that she is in custody in violation of the Constitution or laws of the United States. Therefore, her petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      The petition for writ of habeas corpus (Dkt. # 2) is **denied**.

2.      A separate judgment in favor of Respondent shall be entered in this matter.

3.      A certificate of appealability is **denied**.

**DATED** this 19th day of February, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE